THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JUAN CANCIO RIVERA, Defendant and Appellant.

No. 7088.   Argued June 20, 1938.—Decided July 13, 1938.

*Justo A. Casablanca* for appellant. *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

An information was filed against Juan Cancio Rivera in the District Court of San Juan for a subsequent crime of murder, consisting in his having killed Jovito Padilla with malice aforethought on May 23, 1937, after having been previously convicted by the District Court of Humacao of two murders on July 24, 1916, and December 9, 1919, with sentences of 12 years in the penitentiary and life imprisonment, respectively, which sentences were firm and which he was serving in the Penitentiary of Puerto Rico on the date of the alleged crime.

The defendant was arraigned on September 7, 1937. He pleaded not guilty and requested a trial by jury. The trial was set for January 11, 1938. When the information was read to him at the opening of the trial he ratified his plea of not guilty of the crime charged and admitted the previous convictions. The jury was drawn and impanelled and immediately afterward the evidence was heard.

After the evidence had been presented the judge instructed the jury. After having referred to the information and having mentioned the previous convictions for which the defendant was confined, the judge in his instructions said:

"The defendant pleaded not guilty as to the crime charged; and admitted, through his attorney, the truth of the information in so far as it refers to the recidivation alleged, although he added that the 12 year and life sentences were commuted by the Governor of Puerto

Rico on June 18, 1921, to 35 years 9 months and 18 days. Recidivation means the repetition of the same fault or defect."

In the course of his instructions the judge again referred to the recidivism in the following terms:

"As to the allegation of recidivism, that is, that the defendant was sentenced by the District Court of Humacao on July 24, 1916, to 12 years in the penitentiary, and on December 9, 1919, to life imprisonment, for murder in the second and first degree, respectively, and which sentences were commuted to a punishment of 35 years, 9 months, and 18 days, since these facts are admitted by the defendant, if the jury finds him guilty, whether of murder in the first or second degree or of voluntary manslaughter, then it should also return another verdict declaring that the charge that he was previously convicted is true."

A short time after the case was submitted to it, the jury returned two verdicts: one finding the defendant guilty of/ murder in the second degree, and the other finding that the defendant had been previously convicted.

A date was set for pronouncing sentence, and on that date the court sentenced the defendant to life imprisonment at hard labor for the subsequent crime of murder in the second degree.

The present appeal was taken from that judgment and the attorney for the defendant assigns three errors, to wit:

"1. The court committed a fundamental error in entertaining a prosecution for a crime which is not defined in Puerto Rico, that is, subsequent murder.

"2. The court committed a procedural error in asking the jury, in its instructions, to return two verdicts.

"3. The court committed a substantial error in imposing a sentence of life imprisonment, beyond the limit fixed by statute for the offense of murder in the second degree."

The adjective "subsequent" placed before the classification of a crime, does not alter or vary in any way the essential elements of the same. It only affects the discretion of the trial judge in sentencing the defendant once he

has been convicted. Therefore, in bringing the defendant to trial for a subsequent crime of murder, he was not tried for a crime different from that of murder as defined in sections 199 and following of the Penal Code. The first error assigned by the appellant is therefore nonexistent.

█ "The law does not require useless things" is a cardinal maxim in the law. If the defendant admitted the two previous convictions of murder when the information was read, it was unnecessary to instruct the jury to the effect that if it should find the defendant guilty of the crime of which he was accused, it must also return "another verdict declaring that the charge that he was previously convicted is true". It was sufficient for the jury to return a verdict of guilty, whether of murder in either degree or of voluntary manslaughter, in order for the judge, in his sentence, to mention the previous crimes and sentence the defendant accordingly. *People* v. *González,* 49 P.R.R. 505.

Although this error was committed, its importance does not justify the reversal of the judgment, taking into account the evidence which was before the jury and to which we shall refer in considering the third assignment.

█ The transcript which has been sent up to this court contains only the information, the verdict, certain statements written by the judge as grounds for his sentence, the sentence, and the notice of appeal. It does not contain the evidence, either by transcript or by statement. But the record shows that the defendant was convicted of murder in the second degree and sentenced by the District Court of Humacao on July 24, 1916, to 12 years' imprisonment in the penitentiary; that later he was paroled and while he was enjoying this privilege he committed murder in the first degree, being then sentenced to life imprisonment. The Chief Executive again favored him by commuting both sentences to 35 years, nine months, and 18 days, in consideration of certain services ren-

dered by him during the bubonic plague, and when his sentence would have been served on August 17, 1946, in the absence of anything abnormal, he offends for the third time in committing the present crime, that of killing his fellow-prisoner Jovito Padilla.

The circumstances surrounding this third crime are described by the trial judge in his "Statements of the Court Upon Pronouncing Sentence":

"The evidence has also shown that on this occasion on which you have offended by committing your third bloody crime, you have done so within the limits of the walls of the Insular Penitentiary, the victim having been an inmate and your companion in misfortune, and that the instrument used to commit this crime was audaciously prepared within the penitentiary itself. It has the shape of an awl and is made of the handle of a bucket or pail of zinc such as those used for carrying water. The said handle, originally curved, was straightened out in such a way that one of its ends was a point (spear-shaped) and the other a wooden holder or handle.

"What mind conceived and who prepared this instrument in so adequate and convenient a manner for producing serious bodily injury and even death, as in this case, within the very prison where the rule in force requires that the inmates be unarmed, are details which the evidence does not explain, but there is a fact explained by the evidence which deals with this point with masterly eloquence, and that is that on the afternoon of the unfortunate death of Jovito Padilla that instrument was in the possession of the defendant.

"Now, with what purpose was this instrument made? For what premeditated end did its maker intend it?

"That indeed is explained eloquently and with lavish detail by all the circumstances of the case taken together and especially by the unique and absolute form of the weapon, and if that is not sufficient, then we have the words of the defendant himself when, upon being recriminated by Miguel Sierra, witness for the People, immediately after the attack, who said to him: 'Cancio, you have killed this man!' he answered briefly: 'That was what I wanted.'

"It has been shown by the evidence that the deceased, Jovito Padilla, received two sharp wounds, one in the third intercostal region of the left side and another in the fourth intercostal region of the right side. The wound in the 'left lung with a great hemorrhage

on the entire left side was the cause of death.' (From the testimony of Dr. Kodesh.)

"The two times that the defendant stabbed the deceased his attacks were directed at a primordial part of the body, the thoracic cavity where the noblest of all the organs, the heart, is located.

"The evidence shows another detail coincident to this point when it explains that a few moments before the deceased, Jovito Padilla, lost his life, the latter and the defendant had had a personal encounter, hand to hand, in which the defendant was the aggressor but did not use any weapon against the deceased. An instant later there was a second struggle. The defendant was again the aggressor in the second fist fight and on this occasion he did not draw the homicidal weapon while he struggled at close quarters with his adversary, but only at the critical moment of the tragedy, when the deceased slipped on the damp floor and fell. That was the moment chosen by you to pull from your clothing the instrument with which you killed him, a moment in which the unbalanced condition of your adversary assured you the opportunity of producing and using the weapon without any danger to you."

The evidence left no doubt whatever that the defendant caused the death of Jovito Padilla. Nor would it have justified the jury in finding that the defendant had acted in self-defense, since the deceased was unarmed and it was precisely after he had slipped and fallen to the floor, helpless, that the defendant attacked him twice with the pick. At no time was there any danger, real or apparent, which might justify the killing. Moreover, the defendant was the aggressor.

With self-defense eliminated and the lack of any controversy as to the fact that the defendant killed the deceased, the jury had only two alternatives: to find him guilty of murder in either of its two degrees or of voluntary manslaughter. Assuming that the jury had returned a verdict of voluntary manslaughter, the court would not even then have exceeded its authority in imposing the sentence it did, for, inasmuch as the crime of voluntary manslaughter is

punishable by a maximum sentence of ten years in the penitentiary, it could have sentenced him to life imprisonment under section 56 of the Penal Code which, insofar as it is pertinent, provides:

"Every person who, having been convicted of any offense punishable by imprisonment in the penitentiary commits any crime after such conviction, is punishable therefor as follows:

"1.—If the offense of which such person is subsequently convicted is such that, upon a first conviction, an offender would be punishable by imprisonment in the penitentiary, for any term exceeding five years, such person is punishable by imprisonment in the penitentiary not less than ten years.

"2.—     *     *     *     *     *     *     *
"3.—     *     *     *     *     *     *     * "

The above-transcribed statute alters the punishment for the crime in such a manner as to make it punishable with a minimum sentence of ten years, and as section 56, *supra,* does not specify a maximum sentence in its first paragraph copied above, it does not exclude a sentence of life imprisonment: a punishment which, considering the special circumstances of this case and the criminal record of the defendant, we would not have been justified in altering, thus intervening in the discretion which is granted by law to the trial judge.

In the case of *People* v. *González, supra,* which dealt with a subsequent offense of voluntary manslaughter and in which, of course the aggravating circumstances of the instant case did not exist, this court, through Mr. Chief Justice Del Toro, expressed itself as follows:

"The transcript merely contains the information, the verdict, the judgment, and the notice of appeal. There is no basis, therefore, for considering or deciding the questions raised by the appellant in regard to the conduct of the district attorney. As to the sentence imposed, although it is true that the maximum penalty fixed by law for the crime of manslaughter is ten years' imprisonment in the penitentiary, it is also true that section 56 of the Penal Code provides that a person who, having been convicted of any of-

fense punishable by imprisonment in the penitentiary, commits any crime after such conviction, if the offense of which such person is subsequently convicted is such that, upon a first conviction an offender would be punishable by imprisonment in the penitentiary for any term exceeding five years, such person is punishable by imprisonment in the penitentiary not less than ten years. Inasmuch as in the instant case González had already been convicted of a crime of manslaughter, punishable by imprisonment in the penitentiary at the time he committed the subsequent crime of manslaughter, which upon a first conviction would be punishable by imprisonment in the penitentiary for any term exceeding five years, the proper penalty to be imposed was a term of not less than ten years. The court sentenced him to twelve years and in doing so it acted within the powers granted to it by law.''

The third error assigned by the appellant was not committed either.

For the reasons stated the judgment appealed from must be affirmed.